NEAL v DEPARTMENT OF CORRECTIONS

ANDERSON v DEPARTMENT OF CORRECTIONS

Docket Nos. 305142, 305186, 305195, 305225, 305226, and 305288.
Submitted April 11, 2012, at Lansing. Decided August 7, 2012, at
9:00 a.m.

Tracy Neal and other female prisoners convicted of felonies and
incarcerated in facilities operated by the Department of Correc-
tions (DOC), brought a class action in the Washtenaw Circuit
Court (Docket Nos. 305142, 305186, and 305225), and Nicole
Anderson and other female prisoners brought a similar action in
the Court of Claims (Docket Nos. 305195, 305226, and 305288)
against the DOC, past and current DOC directors, and various
wardens, as well as corrections officers, alleging that they were the
victims of systematic sexual harassment, sexual assault and retali-
ation inflicted by male corrections personnel. The actions were
consolidated below and ultimately resulted in a settlement agree-
ment in which the DOC agreed to pay $100 million in installments
over a six-year period into an escrow account, which would then be
distributed to the attorneys and class members according to an
allocation plan. To prevent retaliation against the class members,
the trial court entered a protective order that prohibited the
disclosure of the names of class members other than to necessary
DOC and Attorney General employees. The Wayne County Pros-
ecutor and the Oakland County Reimbursement Unit/Fiscal Ser-
vices Division intervened, seeking to discover the names of the
class members to ensure that any outstanding orders of restitu-
tion, court costs, and court-appointed attorney fees arising from
plaintiffs' respective judgments of sentence were paid from the
proceeds of the settlement agreement. The Department of Human
Services (DHS) intervened to ensure that payment of any out-
standing child support obligations were also paid from the pro-
ceeds of the settlement agreement before distribution to the
plaintiffs in the class action. The court, Timothy P. Connors, J.,
ordered intervenors to submit a list of the names of any female
prisoner with an outstanding obligation who might have been a
member of the class. Plaintiffs' counsel was to then compare those
lists to the names of class members to determine if any class

member had an outstanding obligation. Intervenors objected, arguing that they needed the list of names of the class members to check that list against their own records. The court declined to order disclosure of the identities of the class members. Intervenors appealed and the Court of Appeals consolidated the cases.

The Court of Appeals *held*:

1. Under MCL 791.220h, if a prisoner is ordered to pay restitution to the victim of a crime and the DOC receives a copy of the restitution order from the court, the DOC must deduct fifty percent of the funds received by the prisoner in a month over $50 for payment of the restitution. Any funds owed by the DOC, or to be paid on behalf of one or more of its employees to satisfy a judgment or settlement to a person for a claim that arose while the person was incarcerated, shall be paid to satisfy any orders of restitution of which the DOC has a record. The DOC has the responsibility to withhold money from the settlement and forward to any victim the restitution that had been ordered, but only if a copy of the restitution order had been sent to the DOC. MCL 791.220h(2) mandates that proceeds from a judgment or a settlement in litigation against the DOC must first be used to satisfy any outstanding restitution order filed with DOC before proceeds may be distributed to a prisoner. The provision of the stipulated protective order that did not allow disclosure of the names of the prisoners involved in the class action to the DOC or its employees was invalid because the DOC has a clear statutory obligation to disburse the funds to the victims in payment of restitution obligations. The parties could not stipulate to an order that relieves the DOC of its statutory obligations or that precludes the DOC from being able to fulfill its statutory obligations.

2. Under MCL 600.5511 any damage award to a prisoner arising out of a claim against the DOC or its employees must first be utilized to pay any outstanding restitution, costs and fees, or other assessments owed to the jurisdiction housing the prisoner. The DOC may not disburse any funds to any plaintiff class member until there has been full payment of all pending restitution orders, costs, and fees as required by MCL 600.5511(2). The DOC must seek to recover any payments to any particular class member if a disbursement was made before all pending restitution orders, costs, and fees were paid and any future payment owed to that particular class member would be inadequate to meet the obligations under the statute. Although MCL 600.5511 was enacted three years after some of the claims in these actions were filed, MCL 600.5511(2) is remedial or procedural in nature and was appropriately applied retroactively because it merely ensured

plaintiffs' payment of their preexisting financial obligations from proceeds to which they had become entitled to receive after the enactment of the statute.

3. Under MCL 552.625a(1), there is an automatic lien on the assets, including settlements and judgments arising from a civil action, of any person obligated to pay child support once that support becomes due and unpaid. The trial court order regarding disclosure of the names of the class members must allow the DHS to effectively collect as much of the support obligation owed by class members as possible from the proceeds of the settlements and to do so before further distribution of the proceeds.

4. Intervenors have no statutory right to know the identity of the class members and the trial court has authority to determine an appropriate method to ensure that the DOC is meeting its statutory obligation under MCL 791.220h and MCL 600.5511 with respect to the proper disbursement of the settlement proceeds.

5. Intervenors' argument that the trial court lacked jurisdiction to issue a protective order because it was by stipulation and not raised by a motion as required by MCR 2.302(C) was not preserved for review because they failed to raise the issue in the trial court.

6. The names of the class members were never a part of the court record. Therefore, MCR 8.119(F), which applies to the requirements for sealing court records, was inapplicable to this case.

7. Any future disbursements under the settlement agreement were stayed until a procedure is in place that will ensure that any outstanding child support, restitution, costs and fees will be collected from the settlement proceeds before the proceeds are disbursed to any class member owing such an obligation.

Affirmed in part, reversed in part, and remanded.

1. SETTLEMENTS — DEPARTMENT OF CORRECTIONS — PRISONERS — DISTRIBUTION OF SETTLEMENT PROCEEDS — RECOVERY OF RESTITUTION BY DEPARTMENT OF CORRECTIONS.

   Under MCL 791.220h, if a prisoner is ordered to pay restitution to the victim of a crime and the Department of Corrections (DOC) receives a copy of the restitution order from the court, the DOC must deduct fifty percent of the funds received by the prisoner in a month over $50 for payment of the restitution; any funds owed by the DOC, or to be paid on behalf of one or more of its employees to satisfy a judgment or settlement to a person for a claim that arose while the person was incarcerated, shall be paid to satisfy any orders of restitution imposed on the claimant of which the

DOC has a record; the DOC has the responsibility to withhold money from such a settlement and forward to any victim the restitution that had been ordered, but only if a copy of the restitution order had been sent to the DOC; under MCL 791.220h(2), the proceeds from a judgment or a settlement in litigation against the DOC must first be used to satisfy any outstanding restitution order filed with DOC before proceeds may be distributed to a prisoner.

2. SETTLEMENTS — DEPARTMENT OF CORRECTIONS — PRISONERS — DISTRIBUTION OF SETTLEMENT PROCEEDS — RECOVERY OF RESTITUTION BY DEPARTMENT OF CORRECTIONS.

Under MCL 600.5511, any damage award to a prisoner arising out of a claim against the Department of Corrections (DOC) or its employees must first be utilized to pay any outstanding restitution, costs and fees, or other assessments owed to the jurisdiction housing the prisoner; the Department of Corrections DOC may not disburse any funds to any plaintiff class member until there has been full payment of all pending restitution orders, costs, and fees as required by MCL 600.5511(2); the DOC must seek to recover any payments to any particular class member if a disbursement was made before all pending restitution orders, costs, and fees were paid.

*Pitt, McGehee, Palmer, Rivers & Golden, PC* (by *Beth M. Rivers, Michael L. Pitt, Peggy Goldberg Pitt,* and *Cary S. McGehee*), *Deborah A. LaBelle, Richard A. Soble, Molly H. Reno, Patricia Streeter,* and *Ronald J. Reosti* for Tracy Neal, Nicole Anderson, and others.

*Bill Schuette,* Attorney General, *John J. Bursch,* Solicitor General, *Richard A. Bandstra,* Chief Legal Counsel, and *Joshua S. Smith,* Assistant Attorney General, for the Department of Human Services.

*Kym L. Worthy,* Prosecuting Attorney, and *Donn Fresard* and *Dana M. Hathaway,* Assistant Prosecuting Attorneys, for the Wayne County Prosecuting Attorney.

*Mary Mara,* Assistant Corporation Counsel, for the Oakland County Reimbursement Unit.

Before: HOEKSTRA, P.J., and SAWYER and SAAD, JJ.

SAWYER, J. In these consolidated cases, intervenors appeal by leave granted the trial court order[1] denying their discovery requests to learn the identities of the plaintiff class. We affirm in part, reverse in part, and remand.

The underlying class actions in this case were brought by women convicted of felonies and incarcerated at facilities operated by the Department of Corrections (DOC). Plaintiffs filed these actions against the DOC, past and current directors and various wardens, as well as corrections officers. Plaintiffs alleged that they were the victims of systematic sexual harassment, sexual assault and retaliation inflicted by male corrections personnel. See *Neal v Dep't of Corrections*, 230 Mich App 202; 583 NW2d 249 (1998).

That litigation ultimately resulted in a settlement agreement in which DOC agreed to pay $100 million in installments over a six-year period paid into an escrow account and then distributed to the attorneys and class members according to an allocation plan.[2] DOC also agreed to waive the prohibition on prisoners maintaining accounts at financial institutions outside their DOC institutional account. The trial court also entered a protective order that prohibited the disclosure of the names of class members other than to necessary DOC and Attorney General employees. The purpose of the protective order was to prevent retaliation against the class members.

---

[1] Though separate class actions were brought in the Washtenaw Circuit Court and the Court of Claims, the actions were consolidated below.

[2] The installments are due each October from 2009 through 2014. Approximately one-third of the disbursements have already been made and two-thirds remain to be paid.

Thereafter, the Wayne County Prosecutor and the Oakland County Reimbursement Unit/Fiscal Services Division, intervened seeking to discover the names of the class members to ensure that any outstanding orders of restitution, court costs, and court-appointed attorneys fees arising from judgments of sentence were paid from the proceeds of the settlement agreement. The Department of Human Services (DHS) intervened, seeking to ensure the payment of any outstanding child support obligations. Plaintiffs' counsel responded that it was her understanding that all applicable laws regarding these payments were being complied with and the protective order precluded the release of the identity of the class members. DOC similarly refused to comply with the discovery requests due to the protective order.

The trial court attempted to resolve the matter by having intervenors submit a list of the names of any female prisoner with an outstanding obligation who might have been a member of the class. Plaintiffs' counsel was to then compare those lists against the names of class members to determine if any class member had an outstanding obligation. This failed to resolve the dispute, however, because intervenors determined that it was logistically impossible for them to generate a comprehensive list of all potential claimants. They continued to maintain that they needed the list of names of the class members to check that list against their own records. Ultimately, the trial court declined to order the parties to disclose to intervenors the identities of the class members and this appeal followed.

We agree with intervenors' general proposition that there are constitutional and statutory provisions that support victims' rights to recover restitution, as well as the government's right to recover fines, costs and fees

imposed as part of a judgment of sentence. And we also agree that, to the extent that the settlement agreement between the parties is inconsistent with applicable statutes, those provisions are unenforceable. But that does not equate to intervenors having a right to discover the identities of the class members. On the other hand, we are not in agreement with the trial court's approach of putting the burden on intervenors to produce a list of prisoners who owe an obligation and are potentially a member of the class. Nor are we convinced that it was appropriate to put the burden on plaintiffs' counsel to determine if a potential obligor was a member of the class because that places on counsel a serious conflict of interest between protecting the interests of the client and the efforts of intervenors to collect the obligations owed.

In resolving this matter, we must begin by looking at the relevant statutory provisions. We review de novo questions of statutory interpretation. *People v Swafford*, 483 Mich 1, 7; 762 NW2d 902 (2009). In doing so, we discover the general resolution to this issue. At issue are the provisions of MCL 791.220h and MCL 600.5511.

MCL 791.220h provides as follows:

(1) If a prisoner is ordered to pay restitution to the victim of a crime and the department receives a copy of the restitution order from the court, the department shall deduct 50% of the funds received by the prisoner in a month over $50.00 for payment of restitution. The department shall promptly forward the restitution amount to the crime victim as provided in the order of restitution when the amount exceeds $100.00, or the entire amount if the prisoner is paroled, transferred to community programs, or is discharged on the maximum sentence. The department shall notify the prisoner in writing of all deductions and payments made under this section. The requirements of this subsection remain in effect until all of the restitution has been paid.

(2) Any funds owed by the Michigan department of corrections or to be paid on behalf of one or more of its employees to satisfy a judgment or settlement to a person for a claim that arose while the person was incarcerated, shall be paid to satisfy any order(s) of restitution imposed on the claimant that the department has a record of. The payment shall be made as described in subsection (1). The obligation to pay the funds, described in this section, shall not be compromised. As used in this section, "fund" or "funds" means that portion of a settlement or judgment that remains to be paid to a claimant after statutory and contractual court costs, attorney fees, and expenses of litigation, subject to the court's approval, have been deducted.

(3) The department shall not enter into any agreement with a prisoner that modifies the requirements of subsection (1). Any agreement in violation of this subsection is void.

Much of the dispute related to victim restitution can be resolved by reference to this statute. First, it clearly puts the burden on DOC to withhold money from the settlement and forward to the victims any restitution ordered. Second, DOC has such an obligation only if a copy of the restitution order has been sent to the department.

We note that it should be unnecessary for intervenors to identify potential class members who have outstanding restitution obligations because *all* restitution orders relating to defendants that have been sentenced to the custody of the DOC should have been forwarded to the DOC for collection from prisoners' funds. Because MCL 791.220h(1) does not, by its terms, apply only to the proceeds of lawsuits against DOC, but to any prisoners funds, we would expect that all restitution orders would be automatically forwarded for any defendant sentenced to prison.

And by the clear mandate of the statute, the DOC must collect from prisoner funds any outstanding restitution obligation. Therefore, the DOC should already have been withholding from the disbursements funds allocated to any prisoner who had an outstanding restitution obligation until that obligation was satisfied.

We should note that attention must be paid to the differences between subsections (1) and (2). Subsection (1) only applies to prisoners and it limits the amount that can be deducted (50% of the funds received in excess of $50 in any given month). Subsection (2), on the other hand, applies to a "person" who receives money from a judgment or settlement against the DOC or a DOC employee. It is not limited to current prisoners, nor is there a limit to the amount that can be withheld. That is, all of the funds owed to a person arising from a settlement or judgment against the DOC or its employees are to be withheld until restitution is satisfied.[3] Therefore, the DOC should already have been withholding from the three previous disbursements any amounts that would be paid to a class member who had an outstanding restitution obligation (of which the DOC had a record) and should continue to do so in the three remaining disbursements until the restitution obligation is satisfied.

Plaintiffs argue that the protective order does not interfere with the enforcement of the statute for two reasons. First, once a prisoner is released from incarceration, her name is released to the DOC, which can

---

[3] The reference in subsection (2) to subsection (1) is only in regard to how the payment to the victim is made, not in reference to how the funds are withheld. That is, the DOC does not have to make payments to the victim until the accumulated amount exceeds $100 or the prisoner is released from incarceration.

then determine if any restitution needs to be paid. Second, for those class members who remain incarcerated, when the money is transferred into their institutional prison accounts, the DOC would automatically deduct the money to pay the restitution pursuant to subsection (1). While there is some logic to these arguments, they fail because they are premised on a third argument, which is flawed. That argument is that MCL 791.220h does not mandate that restitution be satisfied before settlement proceeds are distributed. As we discussed earlier, the clear meaning of subsection (2) is that the proceeds from a judgment or a settlement in litigation against the DOC must first be used to satisfy any outstanding restitution order filed with the DOC before any proceeds may be distributed to a prisoner.[4]

Accordingly, to the extent that the protective order does not allow for the disclosure of names to the DOC or its employees in order for the DOC to comply with its statutory obligations, or provide for some alternative method that ensures the DOC's compliance, that provision is invalid. The DOC has a clear statutory obligation to disburse the funds to the victims in payment of restitution obligations and an agreement in violation of law is unenforceable. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 51; 664 NW2d 776 (2003). And the fact that this agreement takes the form of a stipulated order does not change this basic principle because a stipulated order that does not conform to the law is void. *Miller v Miller*, 264 Mich App 497, 507 n 12; 691 NW2d 788

---

[4] The concern that DOC is not fully meeting this obligation is reflected in plaintiffs' brief on appeal when they indicate that it was DOC's clear intent in reaching the settlement to not be involved in the identification of class members and the allocation of settlement funds. While the DOC's desire to stay out of that process is understandable, it is not feasible given its statutory duty to collect restitution before the distribution of the proceeds.

(2004), rev'd on other grounds 474 Mich 27; 707 NW2d 341 (2005). Simply put, the parties could not stipulate to an order that relieves the DOC of its statutory obligations or that precludes the DOC from being able to fulfill its statutory obligations.

MCL 791.220h only resolves the question of restitution. With respect to court costs, etc., we must turn to MCL 600.5511, which provides in pertinent part as follows:

(2) Subject to section 220h of 1953 PA 232, MCL 791.220h, and the crime victim's rights act, 1985 PA 87, MCL 780.751 to 780.834, any damages awarded to a prisoner in connection with a civil action brought against a prison or against an official, employee, or agent of a prison shall be paid directly to satisfy any outstanding restitution orders pending against the prisoner, including, but not limited to, restitution orders issued under the state correctional facility reimbursement act, 1935 PA 253, MCL 800.401 to 800.406, the prisoner reimbursement to the county act, 1984 PA 118, MCL 801.81 to 801.93, 1982 PA 14, MCL 801.301, and the crime victim's rights act, 1985 PA 87, MCL 780.751 to 780.834, any outstanding costs and fees, and any other debt or assessment owed to the jurisdiction housing the prisoner. The remainder of the award after full payment of all pending restitution orders, costs, and fees shall be forwarded to the prisoner.

(3) Before payment of any damages awarded to a prisoner in connection with a civil action described in subsection (2), the court awarding the damages shall make reasonable efforts to notify the victims of the crime for which the prisoner was convicted and incarcerated concerning the pending payment of damages.

This statute, if applicable, would not only resolve the restitution issue, it would also resolve the issues relative to outstanding court costs and fees (but not the child-support issue). This statute clearly provides that any damage award to a prisoner arising out of a claim

against the department or its employees must first be utilized to pay any outstanding restitution, costs and fees, or other assessments owed to the jurisdiction housing the prisoner. Only after full payment of restitution, costs and fees may any money be paid to the prisoner.

Plaintiffs' primary argument against the application of MCL 600.5511 to this dispute is that it was not enacted until three years after the filing of these actions and, therefore, does not apply. We disagree. First, we note that this is true only for some of the claims. The *Neal* case was filed in 1996. But the *Anderson* case was not filed until 2003 and was consolidated with *Neal*. Therefore, even if we agree that the statute does not apply to cases filed before the statute was enacted, it would still apply to the *Anderson* claims. But we do need to resolve the issue with respect to the *Neal* claims.

The retroactivity issue was addressed in a prior appeal in this case. *Neal v Dep't of Corrections*, unpublished opinion per curiam of the Court of Appeals, issued February 23, 2006 (Docket Nos. 253543 and 256506). But we are not persuaded that that opinion controls here. Initially, because it is unpublished it is not precedentially binding. MCR 7.215(C)(1). Furthermore, neither are we persuaded that the law of the case doctrine applies. First, intervenors were not a party to the prior appeal. Second, while the prior appeal considered the retroactive application of the prison litigation reform act, MCL 600.5501 *et seq.*, it considered it in relation to a different aspect of the act. Specifically, it considered whether the requirement of MCL 600.5503(1) that a prisoner exhaust all administrative remedies before filing suit, barred claims that had accrued before the enactment of the statute. *Neal*,

unpub op at 3. This Court concluded that the requirement only applied to those claims that had accrued after the effective date of the act.

In this appeal we deal not with the question whether a claim is barred by the statute, but with how the proceeds of a settlement are to be disbursed. The settlement was reached after the effective date of the act, when all parties would be aware of the provisions of the law. Thus, while applying MCL 600.5503(1) retroactively to bar the claim itself would impair or abrogate a vested right, directing the distribution of settlement proceeds does not. In other words, the application of MCL 600.5511(2) to this case would not retroactively impair or abrogate plaintiffs' rights, but merely ensure the payment of their preexisting financial obligations from proceeds to which they became entitled after the enactment of the statute. Furthermore, we view this portion of the statute as being remedial or procedural in nature and, therefore, it may be applied retroactively. See *Tobin v Providence Hosp*, 244 Mich App 626, 661-662; 624 NW2d 548 (2001).

Accordingly, we conclude that the DOC may not disburse any funds to any plaintiff class member until there has been "full payment of all pending restitution orders, costs, and fees" as required by MCL 600.5511(2) for that particular plaintiff class member. Because disbursement should not have been made until the obligations had been satisfied, the DOC should seek to recover those payments to any particular class member if the future payments owed that particular class member will prove inadequate to meet the obligations under the statute.

While these statutes resolve the obligations of the DOC with respect to the disbursement of the settlement proceeds, it does not itself directly resolve the question

whether the identities of the class members must be disclosed. Initially, we note that nothing in these statutes gives intervenors any particular right to know the identity of the class members. While intervenors certainly have an interest in ensuring that the statutes are complied with and the restitution, fees and costs are properly paid, that does not equate with the right to receive the names of the class members. If the trial court is able to fashion a method to ensure that the DOC is meeting its statutory obligations with respect to the proper disbursement of the proceeds of the settlement without the necessity of disclosing the names of the class members, it is certainly free do so.

We leave it initially to the trial court to determine an appropriate method of doing so. Perhaps the trial court will find it appropriate to appoint a Special Master who will have access to the names of the class members and the DOC records to determine which class members have outstanding obligations and which do not. Or maybe the answer lies in modifying the protective order to allow the release of names, even those currently incarcerated, to a limited number of DOC employees who will oversee compliance with the statutes. We offer these only as suggestions and not as directions. Our only directions are these: (1) the DOC must comply with the statutory provisions to ensure that the restitution, fees and costs required to be paid by a class member are, in fact, paid before any disbursement to that class member, (2) plaintiffs' counsel is not to be the gatekeeper to determine compliance or otherwise to identify which class members have such an obligation, and (3) there must be some oversight mechanism to confirm that the DOC does, in fact, discharge its obligations. We also direct that any future disbursement of funds is to be suspended until a satisfactory method is in place to ensure compliance with the statute.

We do note, however, a statutory provision that may preclude complete concealment of the names of the class members. As intervenors point out, MCL 600.5511(3) obligates the trial court in this matter to make reasonable efforts to notify the victims of the pending payment of damages before any payment may be made to the prisoner. Of course, the notification does not have to disclose that any such damage payment is coming from the proceeds of this particular lawsuit. Nor is the trial court obligated to make public the identity of the victims to whom the notices are sent. But because the notices must be sent, it is conceivable that the identity of a currently incarcerated class member might become known. Nonetheless, the trial court is obligated to comply with this statute. According to intervenors, the trial court has failed to comply with its statutory duty to provide notice. Indeed, if in fact the trial court has not been supplied with a list of names of the class members, then it presumably would be impossible for the trial court to have complied with this duty.

Next, intervenors argue that the trial court lacked the authority to issue a protective order because MCR 2.302(C) requires a motion and this order was entered by stipulation. This issue was not raised below and, therefore, is not preserved for review. *Keenan v Dawson*, 275 Mich App 671, 681; 739 NW2d 681 (2007).

In a similar argument, intervenors argue that the protective order is invalid because it does not meet the requirements of MCR 8.119(F) regarding sealed records. This argument is without merit because it does not appear that the names of the class members were ever part of the court record. In short, the protective order does not, in fact, seal the court records.

It is also argued that plaintiffs are obligated to disclose their names in the caption of the complaint

under MCR 2.113(C)(1)(b). We do not read that rule as requiring that all members of a class in a class action suit be named in the caption of a complaint. As MCR 3.501(A)(1) states, in class actions there are one or more representative parties from the class. Reading these two rules together, we conclude that only the representative parties must be named in the caption of the complaint, not all class members.

Finally, we turn to the issue of the collection of child support by intervenor DHS. MCL 791.220h and MCL 600.5511 do not resolve this issue because they do not deal with the collection of child support, but MCL 552.625a does. That statute provides for an automatic lien on the assets, including settlements and judgments arising from a civil action, of any person obligated to pay child support once that support becomes due and unpaid. MCL 552.625a(1). While this statute is somewhat more procedurally complex than the other two statutes involved in this case, it nonetheless provides a statutory basis under which the DOC may be obligated to withhold funds from the settlement disbursements and remit them in payment of child support obligations.

We note that DHS is taking a very flexible and reasonable approach to this issue. While DHS is not opposed to merely lifting the protective order, it is willing, and indeed had suggested, a method designed to maximize the security of the identity of the class members and to protect the privacy of those members who do not have support obligations. It proposed that a limited number of individuals in the State Court Administrative Office should have access to the names of the class members, determine which have outstanding support obligations, and institute the necessary procedures to collect those support obligations from the settlement amount. This would appear to

be a feasible method of ensuring that DHS can exercise its obligations to collect child support, while maintaining the highest degree of security over the identities of the class members. It would certainly be more secure and less intrusive than that which DHS is already empowered to do by statute. Under MCL 400.234(1), DHS's Office of Child Support is empowered to request any information or record that assists in implementing the Office of Child Support Act, MCL 400.231 *et seq.* from any public or private entity or financial institution. This would presumably authorize the office to obtain the class member list from the DOC and the financial institution serving as the escrow agent, and possibly the trial court itself[5] and plaintiffs' counsel. But we need not decide the scope of DHS's authority under the statute as it does not appear that it has invoked its authority under the statute.

In any event, as with our suggestions regarding the oversight of the collection of restitution, fees and costs, we are not requiring the trial court to adopt the proposed method. If the parties are able to agree on a different method, they are free to do so. And in the absence of an agreement, the trial court is free to adopt DHS's suggestion, or to develop its own method as long as that method is consistent with this opinion. That is to say, the method must permit DHS to effectively collect as much of the support obligation owed by class members as possible from the proceeds of the settlement and to do so before any further proceeds are distributed.

Finally, we are aware that we are placing on the trial court an unusual burden in overseeing the collection of

---

[5] Even if the trial court does not currently possess the list of names it is obligated to send notice to the victims of the class members. This presumably means that at some point, the trial court will have to possess the names in order to comply with this requirement.

the various financial obligations involved in this case, a burden greater than that which would normally be placed on a trial court that oversees a civil case where the plaintiff receives an award and happens to owe one or more of the obligations involved in this case. But the trial court in essence took this burden on itself when it entered the protective order. We do not disparage the actions of the trial court in doing so as we recognize the reasons for the protective order. But just as the unique circumstances of this case necessitated the protective order, they also necessitate greater involvement by the trial court to ensure that the order does not impede the DOC and DHS from meeting their statutory duties.[6] Moreover, these unique circumstances do not shield plaintiffs from meeting their financial obligations.

In summary, the DOC is obligated to meet its obligations under MCL 791.220h and MCL 600.5511 to pay from the settlement proceeds any restitution, fees and costs that any class member is obligated to pay under a judgment of sentence before any future disbursement may be made to such a class member. If the future amounts due to such a class member are inadequate to meet those obligations, the DOC shall make reasonable efforts to recover any of the proceeds previously paid to such a class member to satisfy those obligations. To the extent that the protective order prevents the DOC from meeting its statutory duty in this respect, the trial court shall modify the protective order in such a manner that the DOC is able to fulfill its duty. Similarly, the trial court shall make any necessary modifications to the protective order to ensure that DHS is able to discharge its duty to collect any outstanding support from class members.

---

[6] And it requires adequate third-party oversight to ensure that those duties are properly discharged since the normal oversight is hampered by the secrecy imposed by the protective order.

We encourage the parties to arrive at a mutually agreeable method to implement these requirements. But if the parties are unable to do so, the trial court shall fashion such a method. In doing so, the trial court shall be guided by the principle that the statutory duties of the DOC and DHS take priority over the protective order. That is, a settlement agreement cannot relieve a party (or a nonparty) of a duty imposed by statute. Any agreement must be consistent with the laws of this state. Furthermore, plaintiffs' counsel shall not serve as the gatekeeper to determine which members of the class owe such obligations. While the confidentiality of the identities of the class members should be maintained to the extent possible, oversight must be provided by some entity not associated with plaintiffs or the DOC. Finally, if it has not already done so, the trial court shall promptly send notice to the victims of the class members as required by MCL 600.5511(3).

To ensure that there are no future disbursements in violation of defendant's and the intervenor's statutory duties, we order that any future disbursements under the settlement agreement are stayed until a procedure is in place that ensures that any outstanding child support, restitution, costs and fees are collected from the settlement proceeds before the proceeds are disbursed to any class members owing such an obligation. This stay provision shall be given immediate effect. MCR 7.215(F)(2).

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction. No costs.

HOEKSTRA, P.J., and SAAD, J., concurred with SAWYER, J.